CARR, J.
It was contended by the appellant’s counsel, 1. that under the 3d section of our statute of executions, the fieri facias in question was properly issued, Windrum having a right to demand the same, because the first execution was not returned and executed: 2. that the court could not on motion quash the execution, the proper remedy being audita querela, or injunction: and 3. that if a motion was proper, the decree was wrong upon the facts. The words of the statute on which the first point rests, are taken verbatim from a statute passed in 1726 (4 Hen. stat. at large, p. 156), and there we find them immediately preceded by this preamble: “And for removing all scruples, which may be entertained among clerks, concerning the issuing of executions, Be it enacted and declared,” &c. It is purely directory to clerks. We see from various cases, that, in practice, a plaintiff was permitted to take out several executions upon his judgment at the same time. Stamper v. Hodson, 8 Mod. 302; Miller v. Parnell, 6 Taunt. 370; 1 Com. Law Rep. 414, S. C. This was convenient, and productive of no mischief: for the process was always under the control of the court; and if the plaintiff proceeded upon one, he thereby determined his election, and could make no use of the other. It seems clear to me, that the clause in question was meant merely to regulate this practice; and applies solely to cases, where a party having taken one execution, wishes before that is returned, or acted upon, to take out another. In such case, he is permitted to do so, “at his own proper costs and charges.” This is also the opinion of the federal court, as delivered by chief justice Marshall, in Peyton v. Brooke. It cannot be presumed, indeed it was not contended, that the law meant that a fi. fa. should issue, where in truth a ca. sa. had been levied and not discharged: but it was said, the clerk ®was not to judge of the fact, and could only know of the levy by’ the regular return ; that, therefore, the clerk, in this case, as there was no return, was bound to issue the second execution. I do not think it material to discuss this question ; for, admitting that the clerk committed no error in issuing the execution, the question still remains, could the plaintiff properly have it levied after what had taken place on the ca. sa. and if not, had not the court power to quash it on motion? That the levy of a ca. sa. and the release of the debtor from execution, by the plaintiff or his agent, is an *361 extinguishment of the debt, I have considered to be as well settled a4 any point can be, by an unbroken series of decisions. I must, indeed, do the counsel the justice to say, that I did not understand him to controvert this position. But he contended, that the second execution could not be quashed (especially by a court of chancery) on motion, but there should have been an audita querela, or injunction. I consider that when our law authorised the issuing executions on decrees, it cloathed the chancellor with the power of watching over such process, and correcting any abuses arising under it, to the same extent, and by the same means, that coarts of law exercise. The adjudged cases on the subject shew, that where the debtor had been discharged on a ca. sa. and other execution afterwards taken out against him, it was quashed indifferently on motion, or on rule to shew cause, which in truth is a mere notice of a motion, such as the party has here. With us, the audita querela is intirely superseded in practice, the proceedings by motion being considered as the cheaper and more convenient mode. The cases of Taylor v. Dundass, 1 Wash. 94; Hendricks v. Dundass, 2 Wash. 50; Downman v. Chinn, Id. 303, suffice to shew, that it has been the constant and approved practice of our courts, to exercise the power of quashing process which has irregularly issued, or been abused in the execution of it, on motion. I will not inquire here into the power of an attorney at law to bind his client, by discharging his debtor from execution ; because, from the evidence, I think Wyche acted in the combined character of attorney at law and attorney in fact; and I feel no doubt, that his direction justified the sheriff in the discharge.
GREEN, J.
It is clear, that Wyche had authority from Windrum to control his executions on a decree in chancery against Parker. He was in possession of the ca. sa. delivered it to the sheriff, and directed his proceedings upon it. He afterwards attended the sale appointed under the subsequent execution in company with Windrum, and acted on that occasion, as having the management of the execution. The sheriff, after indorsing his return upon the ca. sa. to the effect that he had executed it, and discharged the defendant by order of Wyche, the attorney' for Windrum, delivered it to Wyche; and there is good reason to believe, from the declaration of Mr. Claiborne, who seems to have acted as the counsel for Windrum, that it was actually carried to the clerk’s office, but the clerk refusing to issue a new execution on account of that return, it was withdrawn. However this may be, the execution and return delivered to Windrum’s agent, from whom the sheriff received the execution, have been suppressed by Windrum or his agent or attorney, after an unsuccessful attempt to prevail upon the sheriff to alter his return and make it false.
The chancellor has, I think, put the just construction upon the execution law. The clerk was justified in issuing the last execution, in consequence of the ca. sa. not being returned; for to make a technical return, it is necessary that the execution should be actually returned to the office, with an indorsement signed by the sheriff, shewing how he has proceeded on it. But the plaintiff took out his second execution at his peril. Knowing the fact of the ca. sa. having been executed, he imposed upon the clerk by suppressing the ca. sa. and got another execution, which could not have issued but for his fraudulent suppression of the ca. sa. and return. Every court has an undoubted power to superintend the execution of its own process, and especially of executions, '"and to correct abuses therein, on motion, in a summary way; and may inquire into the facts necessary to the exercise of that power, either by the aid of a jury, or otherwise; confining itself, in all cases, within the limits of a sound judicial discretion, according to the nature of the case. Nor is there any doubt, that the discharge of a debtor in execution, by order of the plaintiff, is a perpetual bar to a new execution on the same judgment or decree. This is the settled rule in the courts of law; and since all executions, which can be issued upon a judgment at law, have been allowed by our statute to issue upon decrees in chancery, the courts of chancery are bound, in deciding upon all questions in respect to them, to abide by the common law and statutes respecting executions at law.
The question raised at the bar in respect to the right of a plaintiff to take out a new execution in case of a voluntary escape, does not occur in this case; for here was no voluntary escape. The sheriff acted under the directions of one duly authorised to control it. If this be not fully proved, it ought to be presumed in odium spoliatoris: but I think it is sufficiently proved by the evidence: the very suppression of the return is proof that it was a true one, and known to be so; for if it had been false, there would have been no motive to suppress it, since it would have made the sheriff liable for the debt. If that question did arise, I should think, that in a case of voluntary escape, a new execution might be taken out; though the contrary was held, as far back as the reign of Elizabeth, Einacre’s case, Le. 230, yet in the reign of Charles II. it was settled upon the principles of the common law, uninfluenced by any statute, that in such a case, a new execution may issue. Bassett v. Salter, 2 Mod. 136.
CABEEE, J., concurred, and the order was affirmed.